## Case No. 10,437.

ODORLESS EXCAVATING APPARATUS CO. v. CLEMENTS.

[4 Ban. & A. 540;[1] 16 O. G. 854.]

Circuit Court, D. Maryland.　Sept., 1879.[2]

PATENTS—VALIDITY OF REISSUE.

The validity of reissued letters patent, dated February 29th, 1876, No. 6,962, granted to Lew-

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[2] [Reversed in 109 U. S. 641, 3 Sup. Ct. 525.]

is R. Keizer, assignee of Henry C. Bull, reaffirmed.

[Bill of complaint and for injunction to restrain the alleged infringement, by William E. Clements, of the first and third claims of patent No. 6,962, reissued February 29, 1876, to Lewis R. Keizer, assignee of Henry C. Bull, for apparatus for cleaning privies. The original letters patent, No. 115.565, were granted to Henry C. Bull June 6, 1871.] [3]

William Price, for complainant.

George W. Dyer and O. F. Bump, for defendant.

BOND, Circuit Judge. The validity of this patent, as reissued, was established by this court in the case instituted by the present complainant against Quillan, which was decided by the late Judge Giles, and all the questions as to the validity of the reissue, and the identity of the apparatus covered by this patent, with the apparatus used by the defendant, having been considered and passed upon by Judge Giles in that case, we should not, without most cogent reasons, disturb that decision. The only defence now made, which appears to have been less fully brought to the attention of the court in the Quillan Case, is that of want of novelty in the invention for which complainant's patent was obtained, and to determine this point we have examined all the alleged anticipating inventions which, with much industry and ingenuity, have been brought to our attention, and explained by experts and counsel.

As anticipating the first claim of the complainant's patent, commonly called the "Bull" patent, our attention has been directed to the exhibits showing the patents designated in the testimony as "Straus," "Lesage," "Courdier," "Walter," and "Cherrier." All of these are inventions for cleaning privy-vaults, but the first three are essentially different from the "Bull" patent in principle, being contrivances operated by a force-pump, which draws the material to be removed into the pump and forces it thence into the receiver, not making use of a vacuum in the receiver at all, and not suggesting either the principle or the arrangement of the "Bull" apparatus.

The "Walter" and the "Cherrier" patents are indeed inventions in which, as in the "Bull" patent, atmospheric pressure is used to force the material directly into the receiver, in which a vacuum has been created; but in neither of these do we find any anticipation of the complainant's particular combination, or any thing substantially like it. The "Walter" patent describes a large receiving tank or tun mounted on wheels, with two air-pumps attached to it, which are operated by the turning of the wheels in drawing the machine along, by which a vacuum is created in the large tun or receiving-tank. When the apparatus arrives at the place to be cleaned, one end of a pipe is attached to the receiver, and the other dropped into the material in the vault, and then, by opening the pipe into the receiver, the atmospheric pressure forces the material to run up into the receiver. It is plain, we think, that this cumbersome machine lacks all the essential features of the "Bull" patent, and particularly those by which its inventor designed to give it practical utility in cleaning deep vaults where the atmospheric pressure would not force the material to the surface of the ground, and in allowing the use, as receivers, of such casks as could be easily handled and transported when filled.

The "Cherrier" patent, as shown by the exhibits filed by the defendant, admitting all his exhibits to be properly before us, is an apparatus operated by an air-pump, and a deodorizer arranged with reference to the receiver and the pipe leading to the vault, substantially as in the "Bull" patent; but the receiver, so far from being independently movable, is firmly fastened to a rigid frame at a considerable height above the ground, with a secondary receiver, also firmly fastened, beneath it, and still beneath that the movable vessel in which the filth is to be carried away. It is not, and it never was intended to be an apparatus which could clean a deep vault, or from which the filth could be carried away in the same receiver into which it was forced by atmospheric pressure, and it has not the simplicity and general practical utility which distinguishes the "Bull" patent, and we do not find the two inventions at all in conflict.

The third claim in the complainant's patent, which is for the combination of a portable night soil cask and float-valve, was also passed upon and sustained by the decree in the case against Quillan, and none of the exhibits of other devices and inventions which have been shown and explained to us satisfy us that this contrivance, or any substantially the same, had been patented or was in common use prior to the "Bull" patent. Float-valves do appear to have been very commonly used in connection with water-tanks, steam-boilers, &c.; but the application of a float-valve, in the manner described and designed by the "Bull" patent, to the air-outlet orifice of an air-tight cask so as thereby to stop the working of the air-pump and the inflow of the fluid material at another orifice, we think was a patentable and useful invention, which we have not been satisfied had ever been known before.

The fact of infringement is admitted, if the complainant's patent is sustained, and a decree will be passed in accordance with this opinion, and the cause referred to a master to ascertain the damages.

We have been greatly aided in our examination of the issues raised in this case by the excellent manner in which the testi-

[3] [From 16 O. G. 854.]

mony was taken, and has been printed and presented, and by the able arguments of counsel, and the carefully prepared briefs which were submitted, and which have essentially assisted us.

[On appeal to the supreme court the decree of this court was reversed. 109 U. S. 641, 3 Sup. Ct. 525.]